IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF:<br><br>JONATHAN M. JONES and VALERIE A. JONES,<br><br>Debtor(s). | CASE NO. BK 21-80876-TLS<br><br>CHAPTER 7<br><br>ADV. NO. A21-8024-TLS |
| ELETECH, INC.,<br><br>Plaintiff(s)<br>vs.<br><br>JONATHAN JONES,<br><br>Defendants(s). | **ORDER** |

This matter is before the court on the plaintiff's motion for summary judgment (Fil. No. 15) and the defendant's objection thereto (Fil. No. 22). Evidence and briefs were received, and the matter is now ready for decision. Michael T. Eversden represents the plaintiff, and John A. Lentz represents the debtor-defendant.

For the reasons stated below, the motion is granted.

The plaintiff, Eletech, Inc., provides elevator installation, consulting, and maintenance services throughout the states of Nebraska and Iowa. In 2012, Eletech hired the defendant, Jonathan Jones, as a vice president. In 2016, Eletech filed a lawsuit in Nebraska state court alleging Jones breached the duty of loyalty and fiduciary duty, usurped corporate opportunities and self-dealt, tortiously interfered with business and contractual relationships, was unjustly enriched, engaged in deceptive trade practices, and committed theft by deception. The lawsuit was based on Jones' alleged operation of two side businesses while he was employed by Eletech. Jones and his co-defendants filed an answer denying the substantive allegations of the complaint and asserting the affirmative defenses of failure to state a claim upon which relief can be granted, estoppel, the doctrine of unclean hands, and failure to mitigate damages. Jones also counterclaimed for the salary and sales commissions allegedly due him when Eletech terminated his employment, under the Nebraska Wage Payment and Collection Act and the theories of breach of contract, unjust enrichment, and quantum meruit.

Because Jones failed to comply with the state district court's discovery order, that court granted sanctions in favor of Eletech in July 2019 by awarding Eletech judgment of more than $400,000 on its claims against Jones, and dismissing Jones' counterclaim with prejudice. Jones

appealed the order, which the Nebraska Supreme Court upheld in March 2021. Jones then filed the underlying Chapter 7 case in September 2021.

Eletech filed this adversary proceeding to have the judgment debt excepted from discharge. Eletech bases its non-dischargeability arguments on 11 U.S.C. § 523(a)(2)(A) for money or property obtained by false pretenses, a false representation, or actual fraud; 11 U.S.C. § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny; and 11 U.S.C. § 523(a)(6) for willful and malicious injury to Eletech or its property.

Eletech now moves for summary judgment in its favor, asserting there is no genuine issue of material fact as to the non-dischargeability of the judgment debt. It relies on the preclusive effect of the state-court judgment to establish the factual predicate necessary to except the debt from discharge.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The movant bears the initial responsibility of informing the court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the non-movant must respond by submitting evidentiary materials that set out specific facts showing the existence of a genuine issue of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011).

On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are the province of the fact-finder at trial and not of the judge at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250, 255.

## FACTS

The following facts are undisputed or established by the record:

1. Eletech, Inc., is a Nebraska corporation with its principal place of business in Omaha, Nebraska.

2. Jonathan Jones is a debtor in the above-captioned bankruptcy case and at all times relevant hereto was a resident of Omaha, Nebraska.

3. On or about May 8, 2012, Eletech hired Jones as a vice president. In that capacity, Jones had many management responsibilities, including managing day-to-day operations, the sales staff, service, construction, repairs, and modernization sales.

4. While employed by Eletech, Jones was an owner in another company, Conveyance Consulting Group ("CCG"), that was formed to serve as the exclusive sales representative for an interior elevator cab manufacturer located in Canada, a supplier of Eletech. Jones never informed Eletech of his ownership in or relationship with this other company.

5. During his employment with Eletech, Jones formed, in whole or in part, an entity known as Jones Consulting, a Nebraska corporation. Jones informed Eletech that he had formed Jones Consulting to collect commissions owed by Eletech to Jones. Unbeknown to Eletech, Jones Consulting would routinely invoice customers of Eletech for elevator consulting services. The type of work billed by Jones Consulting to Eletech customers was for the type of services being provided by Eletech. At no point did Jones/Jones Consulting disclose this activity to Eletech.

6. During Jones' employment with Eletech, Jones, Jones Consulting, and CCG contacted various parties with whom Eletech had business relationships and attempted to, and at times did, enter into contracts with those parties on behalf of CCG and Jones Consulting.

7. During Jones' employment with Eletech, Jones would misappropriate company funds for his own purposes and/or to the benefit of Jones Consulting and/or CCG. Specifically, Jones would routinely bill Eletech for travel, products and gifts that he was using for his personal gain and/or for the benefit of Jones Consulting or CCG. In addition, Jones would submit false purchase orders on behalf of Eletech for work that was done by CCG or Jones Consulting.

8. Jones also arranged for Eletech to retain a company owned by Jones's friend to develop a custom elevator dispatching and accounting software program. Eletech paid a substantial sum of money for this program, but the program was never delivered.

9. In the course of the state-court lawsuit, Eletech sought sanctions for the repeated failure of Jones and the other defendants in the case to comply with the district court's discovery order. The district court granted Eletech sanctions, awarding Eletech judgment on its claims against Jones in the amount of $407,187.46, among other things, plus costs and interest. The judgment amount was established by the

affidavit of a former owner of Eletech who reviewed the company's books and records related to Jones and computed the "damages to total at least $407,187.46 as a result of the improper actions taken by the defendants as set forth in the Complaint." He further stated that "this amount represents improper charges and expenses incurred by Eletech together with various corporate opportunities lost by Eletech due to Defendants' wrongful conduct." Finally, he attributed the entire damage amount to the actions of Jones.

10. Jones appealed the district court's judgment but then filed a Chapter 13 bankruptcy case (Case No. BK19-81464) while the appeal was pending. The Chapter 13 trustee sought dismissal of that case because Jones was not eligible for Chapter 13 and was unemployed. This court granted the motion on April 27, 2020.

11. The appeal in the state-court lawsuit then resumed, and ultimately the Nebraska Supreme Court upheld the district court's judgment on March 26, 2021.

12. Jones then filed this Chapter 7 case on September 15, 2021.

### PRECLUSIVE EFFECT OF THE STATE COURT JUDGMENT

A state court action to establish a debt is separate from a determination of the dischargeability of that debt in bankruptcy. *Tatge v. Tatge (In re Tatge)*, 212 B.R. 604, 609 (B.A.P. 8th Cir. 1997) (citing *Brown v. Felsen*, 442 U.S. 127, 134-35 (1979)). The bankruptcy court has exclusive jurisdiction to determine whether debts for a debtor's fiduciary or non-fiduciary fraud, embezzlement, larceny, or willful and malicious injury are non-dischargeable. 11 U.S.C. § 523(c); *Zio Johnos, Inc. v. Ziadeh (In re Ziadeh)*, 276 B.R. 614, 619 (Bankr. N.D. Iowa 2002); *Jewell v. Lewis (In re Lewis)*, 637 B.R. 832, 852 (Bankr. W.D. Ark. 2022) (stating that while § 523(c) causes of action often mirror state-law causes of action, "the grounds for nondischargeability are discrete . . . . Accordingly, res judicata is generally not the appropriate basis for determining the conclusive nature of a prior judgment[.]"). Therefore, the court must review the state court judgment to see whether it establishes the elements of a prima facie case under § 523. *Hobson Mould Works, Inc. v. Madsen (In re Madsen)*, 195 F.3d 988, 989-90 (8th Cir. 1999) (per curiam).

The court "employs a flexible and pragmatic approach when assessing the preclusive effect of [another] court's order." *First State Bank of Roscoe v. Stabler*, 914 F.3d 1129, 1136-37 (8th Cir. 2019). When the parties have previously litigated an issue in a state court, the bankruptcy court will look to state law to determine the preclusive effect of that judgment. *Id.* at 1137; *Madsen*, 195 F.3d at 989-90; *Jacobus v. Binns (In re Binns)*, 328 B.R. 126, 129 (B.A.P. 8th Cir. 2005). This court does "not make preclusion determinations in the abstract or in a vacuum." *Stabler*, 914 F.3d at 1137. Instead, it must "look to see what the underlying court actually said and what the parties communicated to one another and to the court about what they understood to be at issue in the underlying proceeding." *Id.*

"The purpose of the collateral estoppel doctrine is to 'protect[] litigants from the burden of relitigating an identical issue with the same party . . . and [to] promot[e] judicial economy by

- 4 -

preventing needless litigation.'" *Luebbert v. Global Control Sys., Inc. (In re Luebbert)*, 987 F.3d 771, 779 (8th Cir. 2021) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)).

In Nebraska, the doctrine of collateral estoppel, also known as issue preclusion, holds that an issue of ultimate fact that was determined by a valid and final judgment cannot be litigated again between the same parties or their privies in any future lawsuit. *Stevenson v. Wright*, 733 N.W.2d 559, 565-66 (Neb. 2007). Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Hara v. Reichert*, 843 N.W.2d 812, 816 (Neb. 2014).

A judgment on the merits, for preclusion purposes, is one which is based on legal rights, as distinguished from mere matters of practice, procedure, jurisdiction, or form. *Kerndt v. Ronan*, 458 N.W.2d 466, 469-70 (Neb. 1990). In other words, any right, fact, or matter directly adjudicated on the merits in a previous action by a court acting within its jurisdiction, or necessarily included in the determination in the previous action, is conclusively settled and may not be relitigated by the parties in a subsequent action. *Id.* at 469. The Nebraska Supreme Court has said that "summary judgments, judgments on a directed verdict, judgments after trial, default judgments, and consent judgments are all generally considered to be on the merits for purposes of res judicata." *Young v. Govier & Milone, L.P.*, 835 N.W.2d 684, 696 (Neb. 2013) (citing *DeVaux v. DeVaux*, 514 N.W.2d 640, 646 (Neb. 1994) (superseded by statute on other grounds as stated in *Alisha C. v. Jeremy C.*, 808 N.W.2d 875, 882 (Neb. 2012))).

## DISCUSSION

In opposing summary judgment, Jones argues (without further detail) the state-court complaint did not contain the necessary elements of §§ 523(a)(2)(A), (a)(4) and (a)(6) to bind the debtor in bankruptcy court; Jones' legal rights were not fully litigated; the judgment made no particular findings as to the elements of § 523(a); and the judgment did not determine whether Jones or his co-defendant companies committed the acts complained of.

To pick the low-hanging fruit first, Jones cannot rely on an argument that his state-court claims were not fully litigated when his delay and inaction were the reasons the state court entered a sanctions judgment against him rather than proceeding to trial. Issue preclusion does not require that the issues *actually* have been litigated, only that the parties had a full and fair *opportunity* to litigate them. *Hara v. Reichert*, 843 N.W.2d 812, 816 (Neb. 2014); *Woodward v. Andersen*, 627 N.W.2d 742, 750 (Neb. 2001) (holding that a party was collaterally estopped from relitigating certain issues because he could have pursued discovery on those issues but chose not to). *See also Caitlin Energy, Inc. v. Rachel (In re Rachel)*, 527 B.R. 529, 537 (Bankr. N.D. Ga. 2015) (applying collateral estoppel in a non-dischargeability proceeding because the debtor "had every opportunity to litigate the issues [in state court] but failed to cooperate in the discovery process"). Here, the state court gave Jones numerous opportunities to obtain counsel and comply with discovery requirements, but he failed to meet those deadlines. Jones cannot now use that as a defense against the potential non-dischargeability of the debt.

With regard to the assertion by Jones that "it is unclear [from] the judgment which party was found to have performed what acts leading to Plaintiff's claims," the state court clearly and unequivocally held Jones himself liable for the full amount of the judgment. The court also held Jones Consulting, Inc., jointly and severally liable with Jones for $213,435.00 of the judgment, and ruled that Conveyance Consulting Group, Inc., was jointly and severally liable with Jones for $39,687.97 of the judgment. Regardless of whether and to what extent these other defendants acted to cause harm to Eletech, Jones is responsible for the entire judgment debt.

The debtor does not dispute that the state-court judgment was final, or that the parties in this proceeding were not parties to the prior lawsuit. The only factor to be addressed, then, is whether the state-court record[1] establishes that the necessary elements to except this debt from discharge were decided in the prior lawsuit.

**§ 523(a)(2)(A)**

Eletech's first cause of action in this adversary proceeding is based on 11 U.S.C. § 523(a)(2)(A). Under that section, the Bankruptcy Code prohibits the discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]" 11 U.S.C. § 523(a)(2)(A). To prevail under this section, the creditor must show, by a preponderance of the evidence, that the debtor (1) made a representation, (2) with knowledge of its falsity, (3) deliberately for the purpose of deceiving the creditor, (4) who justifiably relied on the representation, and which (5) proximately caused the creditor damage. *Hernandez v. General Mills Fed. Credit Union (In re Hernandez)*, 860 F.3d 591, 602 (8th Cir. 2017) (citing *Heide v. Juve (In re Juve)*, 761 F.3d 847, 851 (8th Cir. 2014)).

"[W]hen the circumstances imply a particular set of facts, and one party knows the facts to be otherwise, that party may have a duty to correct what would otherwise be a false impression. This is the basis of the 'false pretenses' provision of Section 523(a)(2)(A)." *Merchants Nat'l Bank v. Moen (In re Moen)*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) (quoting *In re Malcolm*, 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992)). False representations may be by omission or commission. *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1288 (8th Cir. 1987), *abrogated on other grounds*, *Grogan v. Garner*, 498 U.S. 279 (1991). A "misrepresentation" is "not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth." *Moen* at 791 (quoting *LA Capitol Fed. Credit Union v. Melancon (In re Melancon)*, 223 B.R. 300, 308-09 (Bankr. M.D. La. 1998)). A debtor's silence regarding a material fact may constitute a false representation actionable under § 523(a)(2)(A). *Moen* at 791.

The state-court complaint is replete with instances of Jones' overt misrepresentations to Eletech as well as false representations or the failure to correct false impressions that he may have

---

[1] The state-court record as presented to this court consists of the complaint, the answer and counterclaim, the affidavit of Eletech's former owner (which was received into evidence in connection with the sanctions motion), the judgment from the District Court of Douglas County, and the affirming order from the Nebraska Supreme Court. *See* Decl. of Brian T. McKernan (Fil. No. 16).

given Eletech concerning his efforts to use his side businesses to interfere with Eletech's business relationships. Eletech specifically points to the allegations of the state-court complaint to support the elements of § 523(a)(2)(A). Those allegations establish that Jones knowingly and deliberately made these false representations to mislead Eletech, which justifiably relied on those representations to its financial detriment.

Importantly, once the summary judgment movant has met its initial responsibility of informing the court of the basis for the motion and has identified those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to respond by submitting evidentiary materials that set out specific facts showing the existence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). As discussed above, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Here, the entirety of Jones' argument in opposition to summary judgment on the § 523(a)(2)(A) cause of action is: "Even if the judgment from state court seals Jones' fate as to the elements plead within Plaintiff's complaint, the complaint itself fails to fully establish all elements under the bankruptcy code section it now relies upon in this matter. All required elements of §523(a)(2)(A) are lacking." That opposition is entirely lacking specific facts or evidentiary material showing the existence of a genuine issue for trial.[2]

Accordingly, the state court's finding of liability against Jones on Eletech's claim is sufficient to except the debt from discharge under § 523(a)(2)(A).

**§ 523(a)(4)**

Section 523(a)(4) of the Bankruptcy Code excepts from discharge debts for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. Eletech alleges in this adversary proceeding that "[a]s an officer and an employee of Eletech, Jones owed a fiduciary duty to Eletech," which Jones violated by engaging in fraudulent actions that would cause or contribute to injury to Eletech, self-dealing at Eletech's expense, and usurping Eletech's corporate opportunities.

"To prevent a debtor's discharge under the fiduciary defalcation prong of § 523(a)(4), the objecting party must 'establish the following two elements: (1) that a fiduciary relationship existed between [the debtor] and [the objecting party]; and (2) that [the debtor] committed fraud or defalcation in the course of that fiduciary relationship." *U.S. Dept. of Labor v. Harris* (*In re Harris*), 898 F.3d 834, 842 (8th Cir. 2018) (citing *Jafarpour v. Shahrokhi* (*In re Shahrokhi*), 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001)).

---

[2] In his brief, Jones even seems to concede that the allegations of the complaint are sufficient by stating "Admittedly, Eletech's complaint cites several specific factual examples to support its claims."

"[T]he character of the fiduciary relationship or capacity is significant in a section 523(a)(4) analysis as this court is not bound by state law in determining whether a fiduciary relationship existed. Specifically, '[w]hether a relationship is a "fiduciary" one within the meaning of § 523(a)(4) is a question of federal law.'" *Lewis*, 637 B.R. at 858 (quoting *Reshetar Sys., Inc. v. Thompson (In re Thompson)*, 686 F.3d 940, 944 (8th Cir. 2012)). "Acting in a fiduciary capacity" is limited in application to technical or express trusts, not to trusts that may be imposed because of the alleged act of wrongdoing from which the underlying indebtedness arose. *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934) (stating that the scope of the discharge exception is to be limited to technical trusts, not implied or constructive trusts); *Hunter v. Philpott*, 373 F.3d 873 (8th Cir. 2004) (stating "fiduciary" is used in a strict and narrow sense in § 523(a)(4), and fiduciary status must pre-date the debt); *Barclays Am./Bus. Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 878-79 (8th Cir. 1985) (holding that for purposes of § 523(a)(4) fraud or defalcation exception, fiduciary capacity must arise from express trust, not constructive trust or mere contractual relationship).

"The rule that § 523(a)(4) applies only in cases of special or technical trusts, as opposed to implied or constructive trusts, prevents an expansive application of § 523(a)(4) that would except ordinary commercial debts from discharge in bankruptcy." *Clear Sky Properties LLC v. Roussel (In re Roussel)*, 504 B.R. 510, 519 (E.D. Ark. 2013) (footnote omitted). "The technical trust requirement does not, however, require [that the] debtor serve as a trustee under a formal trust agreement." *Id.*

While federal law dictates the boundaries of § 523(a)(4), fiduciary relationships satisfying the statute can be created by state statute, common law, or contract. *Id.* (citing *Thompson*, 686 F.3d at 944-45). The Eighth Circuit Court of Appeals stated in *Long* that "[w]e recognize that there are cases charging individuals, by virtue of their corporate officer status, with the corporation's fiduciary duties. To the extent these cases hold that a statute or other state law rule may create fiduciary status in an officer which is cognizable in bankruptcy proceedings, we agree." 774 F.2d at 878 (footnote omitted). However, to "to meet the requirements of § 523(a)(4), the debtor must be a trustee 'in the strict and narrow sense.'" *Arvest Mortg. Co. v. Nail (In re Nail)*, 446 B.R. 292, 300 (B.A.P. 8th Cir. 2011), *aff'd*, 680 F.3d 1036 (8th Cir. 2012). "The broad general definition of fiduciary – a relationship involving confidence, trust and good faith – is inapplicable." *Id.* (quoting *Shahrokhi*, 266 B.R. at 707).

While Nebraska common law recognizes that corporate officers have a fiduciary relationship to companies and their shareholders and are treated by the courts as trustees, this does not elevate Jones to the level of a trustee in the "strict and narrow sense" required by § 523(a)(4). Accordingly, summary judgment on this count of the adversary complaint is denied.

Eletech also alleges the alternate theories of embezzlement or larceny as grounds for excepting the debt from discharge under § 523(a)(4). Embezzlement is the fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come. *Belfry v. Cardozo (In re Belfry),* 862 F.2d 661, 662 (8th Cir. 1988). The plaintiff must establish that the debtor was not lawfully entitled to use the funds for the purposes for which they were in fact used. *Id.* To show embezzlement, the creditor has to prove that it entrusted its property to the debtor, the debtor appropriated the property for a use other than

- 8 -

that for which it was entrusted, and the circumstances indicate fraud. *Bankers Trust Co. v. Hoover (In re Hoover)*, 301 B.R. 38, 52 (Bankr. S.D. Iowa 2003). Implicit in a claim of embezzlement is a degree of fraudulent intent. *Chapman v. Fuget (In re Fuget)*, 339 B.R. 702, 707 (Bankr. S.D. Iowa 2006).

Larceny is the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without consent of the owner. *Rech v. Burgess (In re Burgess)*, 106 B.R. 612, 622 (Bankr. D. Neb. 1989). "The essential difference between larceny and embezzlement is the manner in which property comes into the possession of the person charged. Embezzlement involves a lawful or authorized possession. In the case of larceny, however, the original taking and possession is unlawful." *Id.*

The damages found by the state court were based on the affidavit stating "this amount represents improper charges and expenses incurred by Eletech together with various corporate opportunities lost by Eletech due to Defendants' wrongful conduct." It is unclear from the state-court complaint whether Eletech could establish that Jones has embezzled any funds or property entrusted to him by Eletech, but the facts as alleged support a finding of larceny, in that Jones used his side businesses to divert income from Eletech as well as cause Eletech to unwittingly pay expenses incurred on his own behalf or on behalf of his other businesses. This supports a finding of non-dischargeability under § 523(a)(4).

**§ 523(a)(6)**

A debt may be excepted from the discharge of debts granted under 11 U.S.C. § 727 if it is "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Debts arising from injuries inflicted negligently or recklessly do not fall within the scope of § 523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998). To except a debt from discharge under that section, a plaintiff must establish, by a preponderance of the evidence, that the debt arises from an injury that is both willful and malicious. *Sells v. Porter (In re Porter)*, 539 F.3d 889, 893 (8th Cir. 2008). In this context, the term "willful" means that the injury, not merely the act leading to the injury, must be deliberate or intentional. If the debtor knows that the consequences are certain, or substantially certain, to result from his conduct, the debtor is treated as if he had, in fact, desired to produce those consequences. *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1180 (8th Cir. 2008). A "malicious" injury is one that is targeted at the creditor, in the sense that the conduct is certain or almost certain to cause harm. *Jamrose v. D'Amato (In re D'Amato)*, 341 B.R. 1, 4-5 (B.A.P. 8th Cir. 2006). "Malice is only implicated by 'conduct more culpable than that which is in reckless disregard of creditors' economic interests and expectancies.'" *Luebbert*, 987 F.3d at 780 (quoting *Long*, 774 F.2d at 880).

The state-court complaint and the Cimino affidavit adequately establish that Jones willfully and knowingly engaged in conduct – by pursuing his side businesses while on the job for Eletech, by using his side businesses to invoice Eletech's customers for work that Eletech had performed, by stealing Eletech's customers, and by fraudulently billing Eletech for personal expenses – that would certainly or almost certainly impede or interfere with Eletech's business relationships and economic health. Again, the Jones brief fails to provide any specific facts in response to this

allegation. The foregoing supports the judgment debt's exception from discharge under § 523(a)(6).

### CONCLUSION

The debtor has failed to show the existence of any genuine issue of material fact in this case. The record of the state-court case between these parties is sufficient to establish the elements of §§ 523(a)(2)(A), (a)(4), and (a)(6) and render the debt owed to the plaintiff non-dischargeable.

IT IS ORDERED: The motion for summary judgment by Eletech, Inc. (Fil. No. 15) is granted. Separate judgment will be entered.

Date: December 7, 2022.

BY THE COURT:

/s/Thomas L. Saladino
Chief Judge


Notice given by the court to:
 *Michael T. Eversden
 John A. Lentz
 U.S. Trustee

*Movant is responsible for giving notice to other parties if required by rule or statute.